**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(WESTERN DIVISION)**

| | | |
|---|---|---|
| _____ | * | |
| **In re:** | * | |
| | * | |
| **NSCO, Inc., F/D/B/A** | * | **Chapter 7** |
| **NICHOLS AND STONE COMPANY,** | * | **Case No. 08-43494-JBR** |
| | * | |
| | * | |
| **Debtor.** | * | |
| _____ | | |

SECRETARY OF LABOR'S LIMITED OBJECTION TO THE TRUSTEE'S
NOTICE OF (1) 401(k) PLAN TERMINATION, (2) DEADLINE TO REQUEST
PAYMENT OF CLAIMS RELATED TO 401(k) PLAN TERMINATION, (3)
DEADLINE TO PROVIDE WRITTEN NOTICE OF INTENT TO AUDIT
401(k) PLAN, (4) REQUEST FOR APPROVAL AND PAYMENT FROM
ESTATE ASSETS OF CERTAIN 401(k) PLAN TERMINATION EXPENSES,
<u>AND (5) ALL DEADLINES RELATED THERETO</u>

Now comes Hilda L. Solis, Secretary of Labor, United States Department of

Labor (hereinafter, "Secretary"), to file a Limited Objection to the Notice of the Chapter

7 Trustee, Jonathan R. Goldsmith ("Trustee").

<u>**Introduction**</u>

Pursuant to 11 U.S.C. § 704(a)(11), the Trustee became the plan administrator of

the 401(k) retirement plan established by the debtor for its employees.  As plan

administrator, the Trustee is a fiduciary to the plan under the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*  In performing his

responsibilities as plan administrator, the Trustee must comply with the fiduciary duties

imposed by ERISA and is personally liable for breaching those duties.  The Secretary of

Labor is responsible for enforcing ERISA's fiduciary standards by conducting

investigations and, where appropriate, bringing civil actions against breaching fiduciaries in U.S. District Court to obtain relief for the plan and its participants and beneficiaries. Plan participants and other fiduciaries may also bring civil actions against breaching fiduciaries on behalf of the plan.

As plan administrator, the Trustee effectuated the termination of the plan, which was a fiduciary act, and may have engaged in other fiduciary conduct.  He now seeks the entry of a proposed order with several types of relief.  First, he seeks an order finding that he "satisfied his obligations" as plan administrator under 11 U.S.C. § 704(a)(11).  Because those obligations include his duty to comply with ERISA's fiduciary standards, he is apparently seeking a declaration that he has complied with his ERISA duties.  Second, he seeks a finding that he has no "remaining liability and/or obligations" as plan administrator, apparently including liability and obligations under ERISA.  Third, he seeks an order that "any and all claims related to the 401(k) Plan and the termination thereof . . . are forever barred."  This would bar the Secretary, the plan participants, and other plan fiduciaries from bringing any action against the Trustee for any breach of his ERISA fiduciary duties he may have committed as plan administrator.  The Trustee's Notice states that government agencies, including the Department of Labor, must state their intention to audit or review the 401(k) plan by November 16, 2009.  If no government agency expresses such intent, the court is to issue the proposed relief described above.  If a government agency expresses the intent to audit, the Trustee is to promptly seek a court hearing to consider whether to enter the proposed order.  Presumably, the government audit must be concluded by the date of that hearing, although the Notice does not address this.

The Secretary of Labor objects to the relief sought by the Trustee as described above for the following reasons. First, this court lacks subject matter jurisdiction under 28 U.S.C § 1334(a) or (b) to determine whether the Trustee has fulfilled his fiduciary duties under ERISA or to release the Trustee from potential ERISA liability. Second, even if the court has jurisdiction, the relief sought is not specifically authorized by the Bankruptcy Code and contravenes ERISA by nullifying ERISA's statute of limitations, providing declaratory relief that is not authorized by ERISA's enforcement provisions, and releasing the Trustee from liability in violation of ERISA's prohibition against exculpation of fiduciary liability. Third, the court has no authority under the Bankruptcy Code to release non-debtors, such as the Trustee, from ERISA liability under the circumstances here.[1]

ERISA was intended to protect the retirement security of pension plan participants by imposing high fiduciary standards on those who manage plans and personal liability for fiduciaries who breach their duties and by authorizing the Secretary, plan participants, and other fiduciaries to seek redress in federal court. Congress did not provide for two classes of fiduciaries with different liability: Chapter 7 trustees acting as plan administrators and all other fiduciaries. Nor did Congress provide plan participants

---

[1] It is important to note that the Secretary does not dispute that the Court may authorize the Trustee to terminate the 401(k) Plan. The decision to terminate a plan is a settlor decision to be made by the Trustee on behalf of the Debtor who sponsored the Plan and not a fiduciary decision governed by the fiduciary responsibility provisions of ERISA. Nor does the Secretary object to the Plan termination fees and expenses claimed by the Trustee for payment since he is seeking payment for those fees and expenses from estate, as opposed to plan, assets. However, the Secretary's lack of an objection with regard to the claimed fees and expenses in the Trustee's Notice should not be construed as reflecting the Secretary's position that such fees would be necessary and reasonable under ERISA if they were paid from assets of the plan. The Secretary is not a creditor in this bankruptcy and accordingly does not believe she has standing to object to the appropriateness of the fees and expenses claimed in the Trustee's Notice.

and beneficiaries with fewer rights and lesser protections with respect to fiduciary actions by the Chapter 7 Trustee. Because the proposed relief is not permitted by ERISA or the Bankruptcy Code, it should be denied.

**I.** **Background Facts**

1.      On October 29, 2008 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101-1532 (the "Bankruptcy Code").

2.      On October 30, 2008, the United States Trustee appointed Jonathan R. Goldsmith as trustee of the Debtor's Chapter 7 estate.

3.      As of the petition date, the Debtor maintained a 401(k) Plan; however, as of the petition date all assets of the plan had been distributed.

4.      On January 23, 2009, the Trustee filed a Motion seeking to terminate the 401(k) Plan and the Debtor's defined benefit pension plan and for related relief.[2]

5.      On January 30, 2009, the Bankruptcy Court entered an order approving and authorizing the Trustee's Motion to Terminate the Plans; to pay expenses related to termination of the 401(k) Plan from estate assets; and approved the Trustee's notice regarding the termination process for the 401(k) Plan.

6.      On September 15, 2009, the Trustee filed his Notice of Plan Termination with the Bankruptcy Court along with a proposed form of order ("Proposed Order").

7.      The Proposed Order includes, *inter alia*, language that would forever bar all claims related to the 401(k) Plan and would declare that the Trustee's obligations were

---

[2] Issues related to the termination of the debtor's defined benefit pension plan were addressed in a stipulated order between the Trustee and the Pension Benefit Guaranty Corporation ("PBGC"), the pension plan's statutory trustee, which was adopted by the court on June 30, 2009.

satisfied under 11 U.S.C. § 704(a)(11) and would release the Trustee from liability and/or

any further obligations.[3]   Moreover, the Trustee's Notice sets forth a deadline of

November 16, 2009, for taxing authorities and/or governmental agencies to notify the

Trustee and the Bankruptcy Court of any intent to conduct an audit of the 401(k) Plan, or

to otherwise review the Plan for any purpose.

II**.  Argument**

A.      The Trustee is an ERISA Fiduciary to the 401(k) Plan, Must Comply with
        ERISA's Fiduciary Duties, and is Personally Liable if He Breaches Those Duties

8.      ERISA is a "comprehensive statute designed to promote the interests of

employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines

Inc.*, 463 U.S. 85, 90 (1983).  Congress passed ERISA for the purpose of "establishing

standards of conduct, responsibility, and obligation for fiduciaries of employee benefit

plans, and  . . . providing for appropriate remedies, sanctions, and ready access to the

Federal Courts."  29 U.S.C. § 1001(b).

9.      Section 704(a)(11) of the Bankruptcy Code provides that "[t]he trustee shall . . . if

at the time of the commencement of the case, the debtor (or any entity designated by the

debtor) served as the plan administrator (as defined in section 3 of [ERISA]) of an

employee benefit plan, continue to perform the obligations required of the administrator."

---

[3] The specific provisions  in the Proposed Order for which the Secretary bases her
objection state "(B)  Any and all claims related to the 401(k) Plan and termination
thereof, other than (i) those claims identified in paragraph A above and (ii) any claim for
services rendered as Trustee as may ultimately be approved by this Court, are forever
barred; (C)  The Trustee has satisfied his obligations under Bankruptcy Code §
704(a)(11) as those duties related to the 401(k) Plan and shall have no remaining liability
        and/or obligations related thereto . .."

11 U.S.C § 704(a)(11).[4]  Under ERISA, a fiduciary is defined to include any person who,

*inter alia*, "has any discretionary authority or discretionary responsibility in the

administration of" a plan.  29 U.S.C. § 1002(21)(A)(iii).  Accordingly, a plan

administrator is, by definition, a fiduciary to the ERISA plan.  29 C.F.R. § 2509.75-8 at

D-3.

10.     Here, the Trustee stepped into the shoes of the debtor as plan administrator

pursuant to 11 U.S.C. § 704(a)(11) and, therefore, became a fiduciary to the 401(k) Plan

pursuant to ERISA.  *In re AB&C Group, Inc.*, 411 B.R. 284, 293 (Bankr. N.D. W.Va.

2009).

11.     The Trustee's effectuation of the termination of the plan was a fiduciary act of

plan administration.  Although the decision to terminate a plan is generally a sponsor

function, *In Re AB&*C, 411 B.R. at 293, *citing Hughes Aircraft Co. v. Jacobson*, 525 U.S.

432, 443 (1997), the decisions made by the Trustee in executing the termination,

including the communications the Trustee makes to participants, are fiduciary functions

governed solely by ERISA's fiduciary standards.  *Waller v. Blue Cross*, 32 F.3d 1337,

1342-43 & n.12 (9th Cir. 1994) (stating that implementation of termination decision is a

fiduciary function); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1169 (D.C. Cir. 1994)

(same).  In performing his fiduciary responsibilities, the Trustee was required to comply

with his fiduciary duties under ERISA, including his duty to adhere to the prudent man

---

[4] ERISA section 3(16), 29 U.S.C. § 1002(16), defines "administrator" as:

> (i) the person specifically so designated by the terms of the instrument under
> which the plan is operated;
> (ii) if an administrator is not so designated, the plan sponsor; or
> (iii) in the case of a plan for which an administrator is not designated and a plan
> sponsor cannot be identified, such other person as the Secretary may by regulation
> prescribe.

standard of care and his duty of exclusive loyalty to the plan participants and

beneficiaries under ERISA sections 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A)

and (B). *In re AB&C*, 411 B.R. at 293-4. The fiduciary obligations imposed under § 404

of ERISA, known as the "duty of loyalty" and the "duty of care" are the "highest known

to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272, n. 8 (2d. Cir.), *cert. denied*, 459

U.S. 1069 (1982).

12.     If the Trustee breached any ERISA duty, he is personally liable for plan losses

resulting from the breach and for appropriate equitable relief. 29 U.S.C. §§ 1109(a),

1132(a)(2), (3) and (5). The Secretary as well as participants and beneficiaries and other

fiduciaries of the ERISA plan may sue the Trustee to obtain these remedies. *Id.* Finally,

ERISA section 410(a) explicitly provides that any "instrument that purports to relieve a

fiduciary from responsibility or liability for any responsibility, obligation or duty" under

ERISA is "void against public policy." 29 U.S.C § 1110(a).

B.     <u>The Court Lacks Subject Matter Jurisdiction to Determine</u>
       <u>Whether the Trustee Complied with his Fiduciary Duties under ERISA,</u>
       <u>Has No Liability under ERISA or to Release the Trustee from Potential</u>
       <u>Liability under ERISA</u>

13.     The Trustee seeks an order that he has complied with his responsibilities as plan

administrator under 11 U.S.C. § 704(a)(11) and has no further liability or obligations to

the plan. Because those responsibilities include complying with his ERISA fiduciary

duties, the Trustee is essentially seeking a determination that he has complied with the

duties described above and has no remaining ERISA fiduciary liability or obligations to

the plan. In addition, he seeks to bar all claims relating to the plan against himself and

apparently all other persons. The Trustee also proposes that unless the Secretary

announces her intent to conduct an investigation of the plan by November 16, 2009, the

court should enter the proposed relief.  It appears that if the Secretary states the intent to

audit, the court will determine whether the Trustee complied with ERISA.  As explained

below, the Court lacks subject matter jurisdiction over the Trustee's request under 28

U.S.C. § 1334(a) or (b).

14.     This Court derives its jurisdiction from the district court.  *See* 28 U.S.C. § 157(a),

(b) (1).  District courts have "original and exclusive jurisdiction of all cases under title

11."  28 U.S.C. § 1334(a).  A case "under title 11" is the bankruptcy petition itself.  *See*

*New England Power & Marine v. Town of Tyngsborough (In re Middlesex Power &*

*Marine Equip. Inc.),* 292 F.3d 61, 66 (1st Cir. 2002)(citations omitted)(stating that case is

the bankruptcy petition).  The Trustee's request for relief is not a bankruptcy petition.

Therefore, this is not a case "under title 11," and this court does not have jurisdiction

under § 1334(a).

15.     District courts also have "original but not exclusive jurisdiction of all civil

proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11."  28

U.S.C. § 1334(b).  The courts have interpreted the phrases "arising under," "arising in,"

and "related to" as three separate and independent bases of subject matter jurisdiction,

each with different particular requirements.  For the reasons discussed below, the relief

proposed by the Trustee does not meet the particular requirements of any of these three

grounds for jurisdiction.  Accordingly, this Court has no jurisdiction to address those

issues.

### 1. "Arising Under" Jurisdiction

16.     Proceedings "arise under" title 11 if they involve a "cause of action created or

determined by a statutory provision of the Bankruptcy Code."  *Goldstein v. Marine*

*Midland Bank N.A. (In re Goldstein)*, 201 B.R. 1, 4 (Bankr. D. Maine 1996)(citations omitted) *see also, Poplar Run Five Ltd. P'ship v. Va. Elec. & Power Co., (In re Poplar Run Five Ltd. P'ship)*, 192 B.R. 848, 855 (Bankr. E.D. Va. 1995)(" . . . only those cases in which a well-pleaded complaint establishes either that federal [bankruptcy] law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal [bankruptcy] law.")(alterations in original; citation omitted). In *In re AB&C Group, Inc.*, 411 B.R. at 288, the bankruptcy trustee proposed a procedure by which the court could approve the propriety of the fees the trustee paid to a plan service provider from assets of the plan after notice to the Secretary, who had a right to object, and a hearing. The court found that the propriety of the fees depended on whether the trustee complied with his fiduciary duties under ERISA in paying the proposed amount of fees from plan assets for the services rendered and did not depend on the Bankruptcy Code. *Id*. at 292 ("the ultimate goal sought by [the Trustee] is an order under which the court would be obligated to rule upon the propriety of charges against the plan – a determination that is governed by the terms of ERISA, not the Bankruptcy Code"). Accordingly, the court found that the court lacked "arising under" jurisdiction over the proposed fee approval procedure. *Id.*

17.    Similarly, the Trustee in the instant case has proposed a procedure for the court to determine that he complied with his ERISA duties as outlined above and has no ERISA liability with respect to anything he may have done as plan administrator. As in *AB&C*, the resolution of these issues depends entirely on ERISA, not the Bankruptcy Code. Therefore, this Court does not have "arising under" jurisdiction.

2.    "Arising In" Jurisdiction

18.     "Arising in' proceedings generally 'are those that are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside the bankruptcy." *In re Middlesex*, 292 F.3d at 68, *quoting, Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987).  It "seems to be a reference to those 'administrative' matters that arise *only* in bankruptcy cases." *In re Wood*, 825 F.2d at 94-97. (emphasis in original); *see also Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir. 1996) (citing *Wood* with approval).  For example, objections to claims, determinations regarding the extent and validity of liens, and motions to appoint an examiner are the kinds of administrative matters which would fall within a bankruptcy court's "arising in" jurisdiction. 1 *Collier on Bankruptcy* ¶ 3.01[4][c][iv], at 3-27 (15th ed. rev. 2008).  The fact that the events which are the subject of an action happened during the course of a bankruptcy does not mean that "arising in" jurisdiction exists.   It is the nature of a claim rather than the factual circumstances, which determines whether there is "arising in" jurisdiction.  *Newfound Marine, Inc. v. Sumac Corp. (In re Newfound Lake Marina)*, 2008 WL 4868885, *3 (Bankr. D. N.H. 2008)

19.     Disputes over a fiduciary's liability for an alleged breach of fiduciary duty not only "usually" arise outside of bankruptcy; they arise outside of bankruptcy routinely and in overwhelming numbers by comparison.  Therefore, these issues cannot be said to "have no existence outside the bankruptcy," or to involve administrative or similar matters that arise only in bankruptcy cases.  *In re AB&C Group, Inc.*, 411 B.R. at 292 (stating that the determination of the propriety of charges payable from an ERISA-covered plan frequently arise in non-bankruptcy cases and, therefore, do not "arise in"

bankruptcy). Accordingly, this Court lacks core "arising in" jurisdiction over the Trustee's proposed relief.

### 3. "Related to" Jurisdiction

20.     There is also no "related to" jurisdiction over the relief sought by the Trustee.  In the First Circuit, "the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir.1991) (quoting *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)); *see also Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.),* 410 F.3d 100, 105 *(1st Cir.2005); In re Middlesex Power Equip.,* 292 F.3d at 68.  However, regardless of the test used, "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor."  *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995).

21.     The relief sought by the Trustee has no conceivable effect on the bankruptcy estate.  The Trustee's ERISA duties are owed to the plan and its participants and beneficiaries, not the estate or the creditors.  The Trustee's potential personal liability for breaching those duties has no effect on the estate.  Neither the debtor nor the estate would be liable for potential breaches of fiduciary duty committed by the Trustee.  Instead, the Trustee would be personally liable, 29 U.S.C. § 1109(a), and he cannot be exculpated from that liability under ERISA section 410(a), 29 U.S.C. § 1110(a).  Although ERISA section 410 expressly prohibits any agreement or instrument that would relieve a fiduciary from liability or responsibility, DOL regulation, 29 C.F.R. § 2509.75-4, does permit indemnification agreements that leave a fiduciary fully responsible and liable but merely permits another party to satisfy the liability in the same manner as insurance

purchased under ERISA section 410(b)(3)).  To the Secretary's knowledge, no such

indemnification agreement exists that would implicate estate assets.  Moreover, as

explained *infra* at Section D, the Bankruptcy Code does not permit the Trustee to be

indemnified by the estate for his liability for fiduciary breaches.

22.      The relationship between the relief sought by the Trustee and the Trustee's

interest in possible immunity are insufficient to establish "related to" jurisdiction."  *In re*

*AB&C*, 411 B.R. at 295-6.  The *AB&C* court found that the proposed fee approval

procedure was "designed primarily to resolve Plan-specific issues" and had "no

discernible impact upon the estate, the Debtor, or any of its pre-petition creditors."  411

B.R. at 295.  The Court went on to state that "the limited purpose of providing the

Trustee with a possible future defense of immunity does not provide a nexus sufficiently

close to a bankruptcy proceeding upon which this court can rely for 'related to'

jurisdiction. . . . [T]he basis for 'related to' jurisdiction over the payment provisions of

the Proposed Order cannot be its mere relationship to the bankruptcy Trustee; rather,

there must be a closer connection to the underlying bankruptcy case."  *Id.*  The Court

concluded by holding that "because the Proposed Order governs the Trustee's ERISA

fiduciary obligations to a non-estate trust, and the order could not impact the

administration of the bankruptcy estate, the order does not 'relate to' the bankruptcy

case."  *Id.* at 296.   For the same reasons, the relief sought by the Trustee in the instant

case does not relate to the administration of the bankruptcy estate.  *See also Torkelsen*, 72

F.3d at 1181 (rejecting assertion that "status as trustee was sufficient to create bankruptcy

court jurisdiction").

23.     In contrast, actions taken by the Trustee on behalf of the debtor as the sponsor or "settler" of the trust are not fiduciary acts; therefore, the court has jurisdiction to authorize those acts.  The Trustee's decision to terminate the plan is a settlor function, not a fiduciary act.  *In Re AB&C*, 411 B.R. at 293, citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1997).  Accordingly, the Secretary does not contend that the court lacks jurisdiction to approve the decision to terminate the plan.  Similarly, the Trustee's proposed use of estate assets to pay the plan's termination expenses is not an ERISA fiduciary act.  This use of estate assets clearly "relates to" the bankruptcy estate.

24.     Other courts have also concluded that actions against trustees and non-debtor third parties involving claims that do not implicate the bankruptcy estate and that have no effect on the estate are outside "related to" jurisdiction under 28 U.S.C. § 1334(b).  *See Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1180-82 (3d Cir. 1996) (holding that Court lacked jurisdiction over suit alleging trustee negligence in handling painting in the estate's possession because painting was never property of the estate and therefore suit "would have no impact upon the financial affairs of the bankrupt estate"); *Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 926-27 (3d Cir. 1990) (holding that Court lacked jurisdiction over non-debtor's liability for taxes, even though liability stemmed from same withholding taxes owed by the Debtor, because the suit against the non-debtor would "in no way affect the debtor's liability to the IRS"); *Wesche v. Internal Revenue Serv. (In re Wesche)*, 178 B.R. 542 (Bankr. M.D. Fla. 1995) (holding that Court lacked jurisdiction over adversary proceeding challenging IRS' lien on pension because pension was not property of the bankruptcy estate); *Cunningham v. Pension Benefit Guar. Corp.*, 235 B.R. 609, 614-18 (N.D. Ohio 1999) (holding that Court lacked

jurisdiction over adversary proceeding filed by non-debtor defendants after they were

sued by the government in District Court for breaching their fiduciary duties to the

Debtor's pension plan because outcome of suit would not affect the bankruptcy estate).

25.      Therefore, this Court lack subject matter jurisdiction to determine whether to

grant the proposed relief because this is not a case under title 11 and it does not arise

under, arise in, or relate to the NSCO bankruptcy.

C.       <u>Assuming Arguendo that the Court has Subject Matter Jurisdiction, the Relief
         Sought by the Trustee Contravenes ERISA and Its Enforcement Provisions</u>

26.      Even if the court has subject matter jurisdiction, no specific provision in the

Bankruptcy Code authorizes the relief requested by the Trustee.  Moreover, the requested

relief should be denied because it directly contravenes ERISA in several ways, as

explained below.  First, the deadlines for the Secretary to investigate the plan and pursue

claims are contrary to the statute of limitations under ERISA section 413, 29 U.S.C. §

1113.  Second, an order determining that he has complied with ERISA is essentially

declaratory relief that is not available to fiduciaries under ERISA section 502, 29 U.S.C.

§ 1132, even in federal district court.  Third, the release from liability is contrary to

ERISA section 410(a), 29 U.S.C. § 1110(a) which renders void as against public policy

any instrument that purports to exculpate a fiduciary from ERISA liability.

1.       <u>The Relief Requested is Contrary to the Statute
         of Limitations under ERISA section 413</u>

27.      The Trustee's Notice states that any governmental agency must file a notice of

intent to audit the Debtor's 401(k) Plan by November 16, 2009, and failure to submit

such a notice would preclude any governmental entity from reviewing the Plan *"for any*

*reason.*[5](emphasis added).  Assuming that no notice of intent to audit is received,[6] the

Trustee's Proposed Order seeks a determination that "any and all claims related to the

401(k) Plan and the termination thereof . . . are forever barred."  This language would bar

the Secretary, the plan participants, and other plan fiduciaries from bringing any action

against the Trustee for any breach of his ERISA fiduciary duties he may have committed

as plan administrator or against any other person.

28.     The proposed relief contravenes the enforcement scheme of ERISA which allows

the Secretary, plan participants and other fiduciaries a far longer time period to

investigate and file an action to redress violations of ERISA.  The time period for

bringing such an action is generally six years after the date of the last action constituting

a part of the breach, although that time period is shortened to three years when a plaintiff

has actual knowledge of a breach and extended to six years from discovery of the breach

in the case of fraud or concealment.  29 U.S.C. § 1113.  The general six-year time limit

"reflects Congress' determination to impress upon those vested with the control of

pension funds the importance of the trust they hold" and not to allow "those who violate

that trust [to] easily find refuge in a time bar."  *Brock v. Nellis*, 809 F.2d 753, 754 (11th

Cir. 1987).  The proposed relief would also nullify the statute provision that parties have

three years from actual knowledge and six years from discovery of the breach where

---

[5] During informal discussions with Trustee's special counsel, counsel for the Secretary
inquired whether it was the Trustee's intent, with such overly-broad language, to preclude
the Secretary from reviewing and/or investigating the Plan for alleged breaches of
fiduciary duties that occurred pre-petition involving non-debtor/non-trustee fiduciaries.
Special counsel indicated that such a broad prohibition was not necessarily the intent of
the cited language and indicated a willingness to discuss alternative language.
[6] It is somewhat unclear what, other than a hearing, the Trustee would do in the event he
does receive notice of intent to audit from a governmental unit, and what effect that
would have on the proposed order.

there has been fraud or concealment.  The proposed relief would bar claims even if the parties had no actual knowledge of them and where the fiduciary engaged in fraud or concealment.

29.    The Secretary recognizes, of course, that ERISA enforcement actions against the *debtor* are subject to the Bankruptcy Code's automatic stay provisions and the deadlines for filing proof of claims which override ERISA's enforcement scheme.  The Bankruptcy Code, however, contains no provisions which would nullify the statue of limitations on actions against non-debtor plan fiduciaries, such as the Trustee.  In fact, courts deciding ERISA breach of fiduciary duty cases brought by the estate against non-debtor fiduciaries to the debtor's ERISA plans have applied ERISA's statute of limitations in 29 U.S.C. § 1113.  *See, e.g., Burtch v. Ganz (In re Mushroom Transp. Co.*, 382 F.3d 325, 333, 336 n.7 (3d Cir. 2004); *End of the Road Trust v. Terex Corp. (In re Fruehaf Trailer Corp.)*, 250 B.R. 168, 200-03 (D.Del. 2000).  Accordingly, the bankruptcy trustee, as an ERISA fiduciary, is subject to ERISA's statute of limitations period.

30.    Moreover, applying ERISA's limitations period to the trustee's actions as an ERISA fiduciary is consistent with the Bankruptcy Code because the Code imposes no time limit on suits against trustees.  Accordingly, ERISA's statute of limitations applies to the trustee in his capacity as a fiduciary just as it applies to other ERISA fiduciaries.

31.    The Trustee sets the same deadline for parties to object to the Notice and Proposed Order, presumably including objections that the Trustee violated his fiduciary duties with respect to the 401(k) Plan.  By setting a deadline of November 16, 2009, for which all claims against the Plan and/or the Trustee should be brought, he is effectively curtailing the rights of the Secretary, participants, beneficiaries, and other fiduciaries to

bring an action against him in his fiduciary capacity within the time frame prescribed by ERISA section 413.

        2.    <u>The Declaratory Relief Sought is not Available under ERISA</u>

32.    Congress allowed the Secretary or plan participants and beneficiaries to sue fiduciaries and provided for exclusive federal district court jurisdiction over such actions. 29 U.S.C. § 1132(a)(2), (3), (5) and (e)(1). Courts sometimes permit a fiduciary to bring a declaratory judgment action under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), but such an action must be designed to enforce provisions of ERISA or an ERISA plan. *Newell Operating Co. v. International Union, UAW Aerospace and Agr. Implement Workers of America*, 532 F.3d 583, 589 (7th Cir. 2008). Equitable relief under 502(a)(3) is available only to redress ERISA violations or to enforce ERISA or the terms of a plan. Fiduciaries cannot sue for benefits on behalf of participants and beneficiaries. *Coyne & Delaney Co. v. Blue Cross & Blue Shield*, 102 F.3d 712, 715-16 (4th Cir. 1996). Nor may they sue in a way that precludes the Secretary of Labor from bringing her own suit. *See*, *e.g.*, *Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1423-24 (11th Cir. 1998), and cases cited.

33.    The Trustee's request for relief seeking an order that effectively declares that he has complied with ERISA in furtherance of his duties under § 704(a)(11) effectively takes away the choice that Congress gave the Secretary, plan participants, and other fiduciaries on whether to sue by requiring them to participate in what is, in effect, a declaratory judgment action in bankruptcy court by the Trustee to determine whether he has complied with the fiduciary standards under ERISA. Such a request for review is just as impermissible as the declaratory judgment action in *Newell Operating Co.*, where a

17

fiduciary sued for a declaration that its implementation of plan amendments "does not

violate its ERISA fiduciary duties."  532 F.3d at 588.  Such an action is not authorized by

ERISA's enforcement provisions because it is not designed to enforce any provision of

the Plan or ERISA.  *Id*. at 589.  Instead, it is an attempt "to usurp the jurisdictional choice

of * * * [other parties] by filing an anticipatory suit" before they could be sued.

3.    The Release from Liability would be Contrary to ERISA
      Section 410(a).

34.    The release of liability in the proposed relief is inconsistent with ERISA section

410(a), 29 U.S.C. § 1110(a), which provides that, "any provision in an agreement or

instrument which purports to relieve the fiduciary from responsibility or liability for any

responsibility, obligation, or duty under this part [Part 4—Fiduciary Responsibility] shall

be void as against public policy."  Courts have construed this provision to invalidate

exculpatory provisions in bankruptcy as well as outside of bankruptcy.  *See, e.g., Herman

v. Egea (In re Egea)*, 236 B.R. 734, 746 & n.76 (Bankr. D. Kan. 1999) (bankruptcy case);

*In re Benefit Mgmt. Corp.,* No. MM7-87-03292, 1988 WL 384076, at *8 n.6 (Bankr.

W.D. Wis. 1988) (same); *IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415, 1418-

1419 (9th Cir. 1997) (outside bankruptcy); *Chicago Bd. of Options Exch., Inc. v.

Connecticut Gen. Life Ins. Co.,* 713 F.2d 254, 259 (7th Cir. 1983) (same).

35.    The plain language of Section 410 applies to the proposed Order because the

Order is an "instrument."  *See Black's Law Dictionary* 813 (8th ed. 2004)("instrument"

"seems to embrace contracts, deeds, statutes, wills, Orders in Council, orders, warrants,

schemes, letters patent, rules, regulations, by-laws, whether in writing or in

print")(citation omitted); *see also Board of Trustees of the CWA/ITU Negotiated Pension

Plan v. Weinstein*, 107 F.3d 139, 142 (2d Cir. 1997)("instrument" "refers to a document

that sets out rights, duties, or obligations, or has some other legal effect").  The proposed

relief also violates Section 410 for the same reason the Fifth Circuit concluded that an

arbitration rule violates section 410:  it bars an ERISA claim that could be within

ERISA's statute of limitations.  *Kramer v. Smith Barney,* 80 F.3d 1080, 1085 (5th Cir.

1996).  In *Kramer*, Section 410 barred a rule that required a claim to be brought within

six years of an event's occurrence because ERISA tolls the six-year period in cases of

fraud or concealment.  *Id.*  It necessarily follows that the proposed relief, which

drastically shortens ERISA's six-year limitations period is also void under Section 410.

Like the rule in *Kramer*, the proposed relief impermissibly "relieve[s] a fiduciary from ...

liability."  *Id.* (quoting 29 U.S.C. § 1110(a)).  Accordingly, the Trustee's proposed relief

which would releases the Trustee from his ERISA liability is inconsistent with the

express provisions of § 410.

36.     In conclusion, even if the court has jurisdiction to enter the proposed relief, no

specific provision of the Bankruptcy Code authorizes that relief, and that relief would

nullify ERISA's statute of limitations, provide declaratory relief not authorized in

ERISA's enforcement provisions, and violate ERISA's prohibition against exculpating

fiduciaries.

D.      <u>No Legal or Factual Basis Exists for the Granting of the Release Under the
        Bankruptcy Code</u>

37.     Even if the Court has jurisdiction, the requested relief still cannot be granted

because the Bankruptcy Code does not authorize a release of non-debtors in these

circumstances.  First, the Code (except in asbestos driven chapter 11 cases) does not

allow for the release of nondebtors.  Such relief is barred by § 524(e) which states in

pertinent part: "[D]ischarge of the debt of the debtor does not affect the liability of any

other entity on, or the property of any other entity for, such debt."  11 U.S.C. § 524(e).

Second, third party releases sometimes are included in chapter 11 plans pursuant to the

court's authority under 11 U.S.C. § 105(a) to "issue any order, process or judgment that

is necessary or appropriate to carry out the provisions of this title."  Such relief, however,

is not granted in chapter 7 cases.  Finally, while the First Circuit has never ruled on

whether Section 524(e) bars the release of nondebtors, it has explained that the use of

Section 105(a) to bar actions against third parties is an extraordinary act of discretion

available only in very limited circumstances.  As explained below, even if the proposed

release of ERISA claims were being requested as part of a chapter 11 plan, the Trustee

still would have failed in every respect to meet the demanding standards for such

extraordinary relief.

1.    <u>Section 524(e) Bars Release of the Trustee, a Nondebtor</u>

38.    It is the view of the Secretary that §524(e) bars a bankruptcy court from releasing

claims against third parties.  This prohibition is the governing law in the Fifth, Ninth and

Tenth circuits. *See, In re Pacific Lumber Co.*, 584 F.3d 229, 252-53 (5th Cir. 2009)

(§524(e) bars the release of nondebtors other than members of creditors' committees, as

they volunteer their services);  *Resorts Int'l Inc v. Lowenschuss*, 67 F3d 1394, 1401 (9th

Cir. 1995) ("§524(e) precludes bankruptcy courts from discharging the liabilities of

nondebtors"); *Landsing Diversified v. First Nat'l*, 922 F.2d 592, 601 (10th Cir. 1990)

(§524(e) bars the permanent enjoining of claims against non-debtors).

39.    Congress knows how to provide for an exception to § 524(e)'s prohibition on the

release of third parties.  It has exercised that power in a single instance in the enactment

of § 524(g).  Section 524(g) allows for the release of third parties in asbestos claims

driven chapter 11 cases.  In order for such relief to be granted, Congress requires, among

other things, the confirmation of a chapter 11 plan, the establishment of a trust against

which the released claims are channeled, and an affirmative vote by at least 75% of the

affected claimants who vote on the plan. 11 U.S.C. § 524(g)(2).  None of these

protections are being afforded the 401(k) Plan participants.  If Congress had intended to

provide an exception to § 524(e) to allow releases of nondebtors such as the Trustee, it

could have so provided as it did with respect to asbestos claims, but it did not.

40.     The First Circuit is one of the few circuit courts of appeal which has not decided

whether § 524(e) bars a bankruptcy court from approving a third party release.  However,

the First Circuit has recognized that if such releases are allowable, they only are

warranted in "extraordinary circumstances."  *Monarch Life Insurance Co. v. Ropes &*

*Gray*, 65 F.3d 973, 979 (1st Cir. 1995).  In *In re G.S.F. Corp.*, 938 F.2d 1467 (1st Cir.

1991), the First Circuit explained that the use of § 105(a) to enjoin the assertion of a

claim against a third party was "an extraordinary exercise of discretion." *Id.* at 1474.   As

discussed *infra* in section II.D.3., no grounds to exercise such discretion exists.

      2.     <u>Release of Nondebtors not Available under Section 105(a) in Chapter 7
         Cases</u>

41.     If  § 524(e) is not a bar to such relief in all circumstances, the granting of a third

party release in a chapter 7 case (in contrast to a case under chapter 11) is beyond a

bankruptcy court's power.  In *Celotex Corp. v. Edwards*, 514 U.S. 300, 310 (1995), the

Supreme Court observed that "[t]he jurisdiction of bankruptcy courts may extend more

broadly in" chapter 11 cases than in chapter 7 cases.  If one assumes that a bankruptcy

court has the power to grant a third party release, such an ability arises from its equitable

power under §105(a).  The text of §105(a) indicates that its purpose is to give bankruptcy

courts the ability to issue orders in furtherance of other provisions of the Bankruptcy

Code.   Section 1123(b)(6) of the Bankruptcy Code provides that a chapter 11 plan may

"include any other appropriate provision not inconsistent with applicable provisions of

this title."  11 U.S.C. § 1123(b)(6).  This freedom, when combined with the power

granted to a court under § 105(a), creates a basis for arguing that a third party release may

be incorporated into a chapter 11 plan.  No need or authority comparable to that

contained in § 1123(b)(6) is contained in chapter 7 of the Bankruptcy Code.

42.      For example, in *In re Adley*, 333 B.R. 587 (Bankr. D. Mass. 2005), the chapter 7

debtor was an insured under a D&O policy issued by Lloyds.  Numerous claims were

filed against the policy and Lloyds commenced an impleader action in the bankruptcy

court seeking a determination on how the proceeds of the policy should be distributed.

The debtor's chapter 7 trustee and Lloyds proposed a settlement which would relieve the

debtor of millions of dollars in claims and bring an additional $40,000 into the estate.

The settlement contemplated the deposit of the proceeds from the insurance policy with

the court, the payment of a portion of the proceeds to certain creditors and the distribution

of the remaining proceeds to the other claimants pursuant to subsequent orders of the

court.  The settlement channeled all claims relating to the policy to the proceeds being

deposited with the court and enjoined the assertion of any claims against the insurer,

including certain extra-contractual claims.  *Id.* at 597-599.

43.      The court in *Adley* did not question the value of the proposed settlement to the

estate.  *Id*. at 615, n.14.  It recognized that the settlement had "many of the hallmarks of a

reorganization plan." *Id*. at 615.  However, it concluded that "[t]he Debtor's case is not a

Chapter 11 case and …the injunction upon which the Settlement is conditioned is

unsupported by any authority." Id.  It further found "that it lacks even related jurisdiction

to determine those [extracontractual] claims or enjoin their assertion against Lloyds." *Id.*

44.     The material circumstances are no different in the instant case.  The Trustee is

seeking to bar claims arising from his fiduciary action concerning the 401(k) Plan which

is not part of the estate.  It is respectfully submitted that the Court lacks such authority in

a chapter 7 case.

> 3.     No Basis to Exercise Discretion to Release Trustee Exists, even if this
> were a Chapter 11 Case

45.     Certain circuit courts of appeal have allowed for the granting of third party

releases in chapter 11 plans "in the context of extraordinary cases."  *In re Continental*

*Airlines*, 203 F.3d 203, 212 (3d Cir. 2000).  The Third Circuit, like the First Circuit, has

yet to rule on the permissibility of third party releases, other than to reject a proposed

release which is not supported by a substantial evidentiary and legal basis.  Without such

a record, it determined that "a lockstep discharge of non-debtor liability fall[s] …squarely

into the section 524(e) prohibition." *Id.* at 217.

46.     Such a restrictive view of third party releases does not  differ greatly from the

views expressed by circuit courts which allow for such releases in reliance upon a

bankruptcy court's powers under §105(a).  For example, the Second Circuit's opinion on

third party releases, *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005),

reflects the extremely high threshold for the granting of third-party releases:

> Courts have approved nondebtor releases when: the estate received
> substantial consideration; the enjoined claims were "channeled" to a
> settlement fund rather than extinguished; the enjoined claims would
> indirectly impact the debtor's reorganization "by way of indemnity or
> contribution;" and the plan otherwise provided for a full payment of the
> enjoined claims….But this is not a matter of factors and prongs.  No

case has tolerated nondebtor releases absent the finding of
circumstances that may be characterized as unique.

*Id.* at 142 (citations omitted).

47.    In the instant case, this Court will not be required to decide whether §524(e) is an

absolute bar to the granting of a non-debtor release because under any test, the request for

a release of the Trustee for any ERISA liability must be denied.

48.    In describing those cases in which third party releases have been allowed, the

First Circuit in its opinion in *Monarch Life* made reference to the test employed in *In re

Master Mortgage Investment Fund, Inc.*, 168 B.R. 930 ( Bankr. W.D. Mo. 1994);

*Monarch Life*, 65 F.3d at 980.  The test in *Master Mortgage* has been used repeatedly by

Massachusetts bankruptcy courts in deciding whether third party releases should be

granted.  *In re Adley*, 333 B.R. 587,610 ( Bankr.D.Mass. 2005); *In re M.J.H.Leasing,

Inc.*, 328 B.R. 363, 370 (Bankr. D. Mass. 2005); *In re Mahoney Hawkes, LLP*, 289 B.R.

285, 299 (Bankr. D.Mass. 2002); *In re Salem Suede*, 219 B.R. 922, 937 (Bankr. D.Mass.

1998).   If the *Master Mortgage* test cannot be satisfied, there is no need to decide

whether § 524(e) creates a *per se* prohibition against the granting of a third party release.

*Salem Suede*, 219 B.R. at 937.

49.    *Master Mortgage* sets out the following five part test for determining whether it is

appropriate for a bankruptcy court to bar claims against third parties:

> (1) [A]n identity of interests between the debtor and the third
> party, usually an indemnity relationship, such that a suit against the
> non-debtor is, in essence, a suit against the debtor or will deplete the
> assets of the estate.
> (2) The non-debtor has contributed substantial assets to the
> reorganization.
> (3) The injunction is essential to the reorganization….

> (4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment.
> (5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*Master Mortgage*, 168 B.R. at 935 (footnotes omitted).  Like the First Circuit, the court in *Master Mortgage* warned against the broad application of this power to release claims against third parties. The court wrote: "[A] permanent injunction is a rare thing, indeed and only upon a showing of exceptional circumstances in which the factors outlined above are present will this Court even entertain the possibility of a permanent injunction."  *Id.* at 937.  Ignoring this warning, the Trustee has failed to identify any legal or factual basis in support of the release which he is seeking.

50.    With respect to the first *Master Mortgage* factor, the Trustee has failed to identify any identity of interest between the estate and the release.  The Trustee has no right to be indemnified from the estate for any claims arising from his performance of his ERISA obligations.  The First Circuit has refused to accept a lenient standard which would require gross negligence or deliberate conduct before a trustee may be held liable for his actions.  Instead, in *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1 (1st Cir. 1999), it concluded that "there is simply no principled way …to avoid the conclusion that a bankruptcy trustee [as opposed to the bankruptcy estate] can be personally liable for negligent breach of fiduciary duty."  *Id.* at 7.  It would make no sense if a trustee could be indemnified by an estate for a claim for which the First Circuit ruled an estate should not be liable.

51.    The Third Circuit Court of Appeals has similarly warned against the establishment of any practice which would protect non-debtors from personal liability.  In

overturning a chapter 11 plan's third party release in *In re Continental Airlines*, 203 F.3d

203 (3d Cir. 2000), the Third Circuit wrote:  "We conclude that granting permanent

injunctions to protect non-debtor parties on the basis of theoretical identity of interest

alone [arising from a non-debtor's right of indemnification] would turn bankruptcy

principles on their head." *Id.* at 217.  It is unsurprising that the Trustee has failed to

identify any authority granting him the right to be indemnified by the estate for any

breach of his fiduciary duties---no such authority exists.

52.     With respect to the second *Master Mortgage* factor, the Trustee has failed to make

any substantial contribution that would entitle him to a release.  Numerous courts have

ruled that an entity's fulfillment of obligations to which the entity was otherwise bound

does not constitute a substantial contribution that justifies a third party release.  *See e.g.,*

*In re Congoleum Corp.*, 362 B.R. 167, 195-196 (Bankr. D.N.J. 2007)(the court held that

the work performed by the debtor's professionals and officers and directors during the

Chapter 11 proceeding did not justify the third-party releases contained in the proposed

plan of reorganization..

53.     Similarly, in *Mahoney Hawkes*, an opinion repeatedly relied upon by other

Massachusetts bankruptcy courts, the court rejected a proposed release for CNA, the

debtor's malpractice insurer.  While the court recognized that CNA was the chapter 11

plan's primary source of funding, it ruled that such a contribution lacked persuasive

power, as CNA was "only fulfilling its contractual obligation to the Debtor."  *Mahoney*

*Hawkes*, 289 B.R. at 300.  *See also, In re Harbor Marina Co.,* 157 B.R. 726, 732 (Bankr.

D. Mass. 1993) ( nondebtor release not warranted, where released parties have

contributed nothing of certain value other than what Monarch already committed to pay).

In the instant case, the Trustee has done no more than perform those duties required by §

704(a)(11). Moreover, as described above, all assets of the 401(k) Plan already had been

distributed before the Trustee was appointed. The Trustee has provided no support for a

finding by this Court that he has made a substantial contribution to the NSCO

bankruptcy, which would warrant a release.

54.      The Trustee has not satisfied the third and fourth *Master Mortgage* factors; his

requested release is not essential to the reorganization of NCSO; nor has it been

overwhelmingly accepted by the affected claimants. The fact that these requirements

cannot be satisfied in a chapter 7 case does not mean that this failure is without

significance. Whether the proposed release is essential to a case directly relates to the

First Circuit's statement, that even if one assumes that third party releases are sometimes

warranted, their use constitutes an "extraordinary" exercise of power. *In re G.S.F.*, 938

F.2d at 1474. If the release of the Trustee is not essential to the success of the NSCO

chapter 7 case, which it obviously is not, the inability of the Trustee to satisfy this

element of the *Master Mortgage* test is a significant failure. Similarly of importance, it is

recognized that nonconsensual releases should be less easily granted, if at all. As it is,

rather than expressing overwhelming support for the proposed release, the Secretary of

Labor is actively opposing the granting of such relief. Even if any of the 401(k) Plan

participants object as well, the Trustee is seeking a nonconsensual release.

55.      Finally, rather than providing for the payment of all affected claims, the proposed

release is barring such claims without any compensation to the claimants. The Trustee

has not identified any alternative source of payment, if it is discovered that he has

breached his obligations under ERISA. Instead, the 401(k) Plan participants are left

without a remedy.  The elimination of any source of recovery highlights the reasons why the proposed release of any ERISA claims against the Trustee should be denied.

56.     The release of a non-debtor is an extraordinary act of discretion which is particularly unwarranted and inequitable in these circumstances.  The proposed relief would only allow the Secretary a very short time to investigate and then she would be forever barred from enforcing the law.  The Secretary, through the Employee Benefits Security Administration ("EBSA"), the DOL Agency responsible for enforcement of ERISA, is responsible for protecting approximately 700,000 private pension plans, 2.8 million health plans, and 2.5 million other employee benefit plans which hold nearly $5 trillion in assets and which cover nearly 150 million Americans.[7]  EBSA is currently authorized to have only about 390 investigator and/or auditor positions nationwide to investigate this massive number of plans.  Requiring the Secretary to initiate investigations or complete ongoing investigations within a limited amount of time arbitrarily set by bankruptcy trustees would be impractical and would severely interfere with the Secretary's enforcement efforts under ERISA.  The type of relief sought by the Trustee in his Proposed Order would require EBSA to investigate every plan sponsored by a debtor in bankruptcy or otherwise jeopardize the ERISA protections for participants and beneficiaries.

    4.    <u>The Requested Relief Requires the Creation of Impermissible Substantive Rights Not Contained In The Bankruptcy Code</u>

57.     The Trustee's failure to satisfy even one of the five prongs of the Master Mortgage test is reflective of a deeper failure.  Rather than relying upon any "exceptional" need or identifying any "extraordinary" circumstance which the First

---

[7] http://www.dol.gov/ebsa/aboutebsa/main.html

Circuit has stated is required for the use of §105(a), the Trustee is seeking to establish a

new right.  The Trustee is seeking a right to be released of any liability for breach of his

ERISA  fiduciary duties simply because he has undertaken to perform his obligations

under § 704(a)(11).

58.    The Supreme Court has warned that bankruptcy courts may not use their equitable

powers to create new substantive rights. *Norwest Bank Worthington v. Ahlers,* 485 U.S.

197, 206 (1988).  Instead, its powers under § 105(a) may be used only "to carry out the

provisions of the Bankruptcy Code, rather than to further the purposes of the Code

generally, or otherwise to do the right thing."  *New England Dairies, Inc. v. Dairy Mart*

*Convenience Stores, Inc. (In re Dairy Mart Convenience Stores Inc.)*, 351 F.3d 86, 92 (2d

Cir. 2003).   In contrast to this limitation upon the power of a bankruptcy court, what the

Trustee is seeking by his request for a release is a new protection which Congress did not

choose to add to the Bankruptcy Code, when it enacted § 704(a)(11).

59.    The Supreme Court ruled in *United States v. Noland,* 517 U.S. 535 (1996), that

bankruptcy courts could not use their equitable powers to create categorical exceptions to

the Bankruptcy Code's statutory scheme in order to further a court's understanding of

fairness.  In *Noland*, the Supreme Court prohibited the practice of subordinating tax

penalty claims to claims arising from actual pecuniary loss.  It determined that the Sixth

Circuit's perception of what might be fair or just could not be used to create rights "at the

level of policy choice at which Congress itself operated in drafting the Code."  *Id.* at 543.

## **CONCLUSION**

For the reasons set forth herein, the Trustee's proposed relief should be denied,

because this court lacks subject matter jurisdiction under 28 U.S.C § 1334(a) or (b) to

determine whether the Trustee has fulfilled his fiduciary duties under ERISA and to

release the Trustee from potential ERISA liability, and even if the court has jurisdiction,

the relief sought is not authorized by the Bankruptcy Code and contravenes ERISA.

Dated: November 16, 2009                    Respectfully submitted,

                                            Deborah Greenfield
                                            Acting Deputy Solicitor

                                            Michael D. Felsen
                                            Acting Regional Solicitor

                                            */s/Marjorie A. Butler*
                                            Marjorie A. Butler
                                            (BBO# 548797)
                                            Acting ERISA Counsel

                                            Suzanne Brennan Reilly
                                            Attorney
                                            (*Pro Hac Vice* Motion Pending)

                                            U.S. Department of Labor
                                            Office of the Solicitor
                                            JFK Federal Building, Rm. E-375
                                            Boston, MA 02203
                                            (617) 565-2500
                                            (617) 565-2142 (fax)