## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| NSCO, INC. | : | Case No. 08-43494-JBR |
| DEBTOR | : | |

### MEMORANDUM OF DECISION ON TRUSTEE'S EXPEDITED MOTION (1) TO TERMINATE (A) 401(K) PLAN AND (B) DEFINED BENEFIT PENSION PLAN AND (2) FOR RELATED RELIEF [# 82]

This matter originally came before the Court for a hearing on the Trustee's Expedited Motion (1) To Terminate (A) 401(k) Plan and (B) Defined Benefit Pension Plan and (2) For Related Relief [# 82] (the "Termination Motion") and the Limited Objection to the Notice of 401(k) Plan Termination [# 178] filed by Hilda L. Solis, Secretary of Labor for the United States Department of Labor ("DOL"). In addition to authority to terminate the plans, the Chapter 7 Trustee sought approval of a proposed procedure for terminating each plan and receiving a discharge from any further duties imposed by 11 U.S.C. § 704(a)(11) and a release from liability from any claims relating to either of the plans. It is the Court's jurisdiction to enter a release and discharge which forms the basis for the DOL's Limited Objection.

### FACTS AND TRAVEL OF THE CASE

Prior to the Debtor's filing its Chapter 7 petition on October 29, 2008, the Debtor was the administrator of both a defined benefit plan[1] and a defined contribution plan (the "401(k) Plan") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §

---

[1]The Trustee and the Pension Benefit Guaranty Corporation reached an agreement regarding the termination of the defined pension benefit plan and thus the issues relating to the termination of that plan are no longer in dispute.

1001, *et seq.* As of the Petition Date, all of the 401(k) Plan participants had removed their funds from the 401(k) Plan. Although the 401(k) Plan had no funds, it had not been terminated and therefore Jonathan Goldsmith, the duly appointed Chapter 7 Trustee, was impressed with the duty to "continue to perform the obligations required of the administrator." 11 U.S.C. § 704(a)(11). To help him in the performance of those duties, the Court authorized the Trustee to retain Joseph H. Baldiga and the law firm of Mirick, O'Connell, DeMallie & Lougee, LLP as special counsel ("Special Counsel").

On January 23, 2009, after confirming that the 401(k) Plan had a zero balance, the Trustee filed the Termination Motion in which he sought permission to terminate the 401(k) Plan. The Termination Motion also set forth a two-step process for terminating the 401(k) Plan, obtaining an order declaring that the Trustee had fully complied with his obligations under 11 U.S.C. § 704(a)(11), and discharging him and Special Counsel, and presumably any other professional retained to assist in the termination process, from any past or future liability related to the 401(k) Plan. Under the first step the Trustee proposed to authorize the third-party plan administrator[2] to prepare and file the final Annual Report/Form 5500 for submission to the Internal Revenue Service[3] and to provide each 401(k) Plan participant with a copy of the participant's Account Statement and the Summary Annual Report prepared by the third-party plan administrator. Upon completion of the tasks outlined in step one, the Trustee represented that the termination process would be complete and no further action would be required.

---

[2]The Termination Motion does not identify the third-party plan administrator.

[3]The Termination Motion states that the Trustee had already authorized the third-party plan administrator to prepare this report because, according to the Motion, he was required to file the report by May 31, 2009.

After completion of the termination process, the second step would go into effect. Step two provided that the Trustee would (1) file his affidavit attesting to his completion of the termination process and satisfaction of his responsibilities under 11 U.S.C. § 704(a)(11); (2) have Special Counsel file an interim fee application, which fees would be paid by the bankruptcy estate as the 401(k) Plan had no funds; and (3) send a notice he termed a "Notice of 401(k) Plan Termination, Deadline to Request Payment of Claims Related to 401(k) Plan, Deadline to Provide Written Notice of Intent to Audit 401(k) Plan, Request for Approval and Payment from Estate Assets of Certain 401(k) Plan Termination Expenses, and All Deadlines Related Thereto" (the "Termination Notice") to all parties in interest, including the DOL.  As its descriptive title states, the Termination Notice sought to accomplish several things: (1) to give all Plan participants, government agencies and other parties in interest notice that the 401(k) Plan had been terminated and that the Trustee had filed an affidavit attesting to the termination; (2) to give notice of Special Counsel's request for fees and expenses; and (3) to give parties 60 days after the filing of the Termination Notice and Affidavit of Termination in which to file any of the following: (a) objections to Special Counsel's fees and expenses, (b) any "claims related to the 401(k) Plan" and (c) notice of any intent to audit the 401(k) Plan.  The Termination Notice also contained a statement that, absent any timely objections or the filing of claims or notice of intent to audit, the Court could enter an order deeming the Trustee's obligations under § 704(a)(11) fully satisfied and barring the assertion of any claims related to the 401(k) Plan.  The proposed "Order (1) Approving Termination of 401(k) Plan; (2) Authorizing Payment of Expenses Related Thereto; and (3) Deeming Satisfied Trustee's Obligations Pursuant to Bankruptcy Code § 704(a)(11)" (the "Proposed Order") provided in pertinent part:

(B) Any and all claims related to the 401(k) Plan and the termination thereof,

other than [the termination expenses] are forever barred; and

(C)  The Trustee has satisfied his obligations under Bankruptcy

Code  § 704(a)(11) as those duties relate to the 401(k) Plan and

shall have no remaining liability and/or obligations related thereto.

Copies of the proposed forms of the Termination Notice, the Trustee's Affidavit and the

Proposed Order were attached to the Termination Motion.

The DOL and all 401(k) Plan participants were served with a copy of the Termination

Motion and its various attachments.  No party objected to the termination of the 401(k) Plan, the

proposed two-step process, or any portion of the proposed form of the Termination Notice.  After

a hearing, the Court authorized the Trustee to terminate the 401(k) Plan and approved the

proposed Termination Notice.

On September 15, 2009 the Trustee filed and served his Affidavit and the Termination

Notice to which the Proposed Order was attached.  The Termination Notice set November 16,

2009 as the deadline for objecting to Special Counsel's fees and expenses,[4] for submitting any

"claims related to the 401(k) Plan", and for giving the Trustee and the Court notice of any intent

to audit the 401(k) Plan.  On November 16, 2009 the DOL filed both its Limited Objection [#

178] and a Notice of Intent to Audit [#179].  Although the DOL disputes that it had only until

November 16, 2009 in which to notify the Trustee of any intent to audit the 401(k) Plan, it filed

its notice of intent to audit and sent the Trustee a request that he provide additional information

---

[4]The Termination Notice listed those interim fees and expenses at $13,056.30.

4

regarding the 401(k) Plan by October 1, 2009.[5]  Neither the DOL's Objection or its Notice of

Intent to Audit provides a time frame for the DOL to complete its audit.  Despite the DOL's

failure to timely object when the Termination Motion was filed, the DOL's objection states that

it reserves the right to investigate the 401(k) Plan and fiduciaries upon receipt of any information

that suggests a breach of a fiduciary duty may have occurred either pre or post-petition and do so

within the applicable ERISA statute of limitations, which can be as long as six years.

The Court conducted a status conference and gave the parties an extended period in

which to file supplemental briefs addressing the Court's authority to enter the Proposed Order.

**POSITION OF THE PARTIES**

The DOL does not dispute this Court's jurisdiction to authorize the Trustee to terminate

the 401(k) Plan or to rule on the fees and expenses incurred in terminating the 401(k) Plan, as

that expense is being borne by the bankruptcy estate.[6]  This dispute centers on whether the Court

can and should enter so much of the Proposed Order that bars "any and all claims relating to the

401(k) Plan and the termination thereof," and further declares that the Trustee has satisfied all

his obligations under 11 U.S.C. § 704(a)(11).  In his supplemental brief, the Trustee

acknowledges that the Proposed Order could be read to release claims that the plan participants

and others have against the prior administrators of the 401(k) Plan, which the brief defines as

"those responsible prior to the Trustee's appointment as bankruptcy trustee...."  The Trustee has

---

[5]The Court's understanding is that the requested information was provided.

[6]The DOL's pleading suggests it would have challenged this Court's jurisdiction to approve fees if they were to be paid from the 401(k) Plan's assets.  Although DOL's conclusion that this Court cannot determine the reasonableness of fees paid from the plan assets is by no means certain or conceded by this Court, the Court does not need to reach the issue in the instant case.

represented that he "has explicitly clarified to the DOL that the scope of the requested relief relates only to the post-petition period and to activities by the Trustee and his properly engaged professionals."[7]  The foregoing language suggests that the Trustee is not seeking to bar claims against the estate resulting from the Debtor's performance as the 401(k) Plan administrator.[8]

The DOL, asserting that the Trustee is a plan fiduciary by virtue of 11 U.S.C. § 704(a)(11), argues in its Limited Objection that this Court cannot enter paragraphs (B) and (C) of the Proposed Order for three reasons.  First it argues that this Court lacks jurisdiction under 28 U.S.C. § 1334(a) or (b) to determine whether the Trustee has fulfilled his fiduciary duties under ERISA and to release him from any liability for breach of his fiduciary duties under ERISA.  As support for this argument, the DOL relies heavily upon *In re AB&C Group, Inc.*, 411 B.R. 284 (Bankr. N.D.W.Va. 2009), in which that court concluded it lacked jurisdiction to enter the requested relief.

Second, the DOL asserts that even if the Court has jurisdiction, the relief requested is not authorized by the Bankruptcy Code and contravenes ERISA in several ways, including shortening the statute of limitations provided for in ERISA § 413, interfering with the DOL's

---

[7]Brief by Chapter 7 Trustee Regarding Subject Matter Jurisdiction under 11 U.S.C. § 704(a)(11) and Related Issues [#202] at page 7, footnote 4.

[8]The Trustee may not intend to exclude the Debtor from the release despite the statement in his supplemental brief.  The DOL describes informal discussions with Special Counsel during which the DOL questioned whether the broad release language was intended "to preclude the [DOL] from reviewing and/or investigating the Plan for alleged breaches of fiduciary duties that occurred pre-petition involving *non-debtor/non-trustee fiduciaries."*  DOL's Limited Objection at page 15, footnote 5 (emphasis added).  Moreover the DOL acknowledges that the "ERISA enforcement actions against the *debtor* are subject to the Bankruptcy Code's automatic stay provision and the deadlines for filing proof of claims which override ERISA's enforcement scheme."  Limited Objection at ¶ 29 (emphasis in the original).

(and others') right to bring a civil enforcement action under ERISA § 503, and providing a release despite ERISA's voiding of such purported fiduciary releases pursuant to ERISA § 410(a).

The DOL's third point is that the Bankruptcy Code does not authorize the release of non-debtors and, in fact, such release is prohibited by Bankruptcy Code § 524(e), which provides, with limited exceptions not applicable here, that "discharge of a debt of the debtor does not affect the liability of any other entity on, or property of any other entity for, such debt."

The Trustee, parsing the language of § 704(a)(11), disputes that he *became* the 401(k) Plan administrator, a distinction he terms significant. In his view, because his responsibility to carry out the duties of the 401(k) Plan administrator derives solely from § 704(a)(11), that section, coupled with § 105(a)'s grant of authority to enter "orders necessary or appropriate to carry out the provisions" of the Bankruptcy Code provides the jurisdictional basis to enter the Proposed Order. He asserts that the determination that he has satisfied all of his obligations under § 704(a)(11) "arises under" the Bankruptcy Code and thus squarely falls within the Court's core jurisdiction. The Trustee also cites 28 U.S.C. § 157(b)(2), which includes "matters concerning the administration of the estate" among the non-exhaustive list of core proceedings, as further support for this Court's jurisdiction. *See* 28 U.S.C. § 157(b)(2)(A). He argues that establishing deadlines for the assertion of claims against him and his professionals as a result of his actions required by § 704(a)(11) is an action "arising in" the bankruptcy and is a core matter. Moreover the Trustee urges that even if the Court disagrees that these actions come within its core jurisdiction, they at least come within its "related to" jurisdiction and cites *Allard v. Coenan (In re Trans-Industries, Inc.)*, 419 B.R. 21 (Bankr. E.D. Mich. 2009), as support for this position.

7

In its Reply Brief [#203], the DOL also notes that whether the Trustee is actually the 401(k) Plan administrator and therefore a named fiduciary or deemed a "functional" fiduciary because of the actions undertaken in fulfillment of his duties under § 704(a)(11) is irrelevant as both named and functional fiduciaries have the same fiduciary obligations and liability under ERISA.  It also reiterates its previous arguments but adds that the Proposed Order seeks relief in the absence of a case or controversy.  It characterizes a declaration that the Trustee has fulfilled his duties under § 704(a)(11) as an advisory opinion and asserts that barring future actions against the Trustee and his professionals is impermissible because the Trustee is not "under the shadow of threatened litigation." *Fina Oil and Chem. Co. V. Ewen*, 123 F.3d 1466, 1470 (Fed. Cir. 1997).  Finally the DOL argues that the Trustee's derived judicial immunity would not be implicated or infringed upon by refusing to grant the broad release he is requesting.

**DISCUSSION**

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983).  Congress' design to protect the interests of employees and plan beneficiaries is found in the language of the ERISA statute.

> It is hereby declared to be the policy of this chapter to protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b).  The fiduciary duties of a plan trustee to participants and plan beneficiaries under ERISA "are those of trustees of an express trust-the highest known to the law." *Donovan*

8

*v. Bierwirth*, 680 F.2d 263, 272, n. 8 (2d Cir. 1982).  Breach of these duties subjects the fiduciary

to personal liability.  29 U.S.C. §§ 1109(a). 1132(a)(2), (3), and (5).

In the pre-Bankruptcy Code case of *Katchen v. Landy,* 382 U.S. 323, 328-329, 86 S.Ct.

467, 472, 15 L.Ed.2d 391 (1966), the Supreme Court stated "this Court has long recognized that

a chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and

settlement of the estate of all bankrupts within a limited period, and that provision for summary

disposition, without regard to usual modes of trial attended by some necessary delay, is one of

the means chosen by Congress to effectuate that purpose."  (Internal quotation marks and

citations omitted).  The goals of prompt and efficient administration of cases carry forward to the

Bankruptcy Code[9] and Bankruptcy Rules.[10]

> [T]he duty to close the estate expeditiously is the trustee's "main duty," 4 *Collier on Bankruptcy, supra,* ¶ 704.01(3), at 704-5, and "overriding responsibility," *Estes & Hoyt v. Crake ( In re Riverside-Linden Inv. Co.),* 925 F.2d 320, 324 (9th Cir.1991). In order to close an estate expeditiously, a bankruptcy trustee must expeditiously perform each task necessary to close the estate, including the liquidation of the estate.... The duty to close the estate expeditiously will often conflict with other duties, *In re Melenyzer,* 140 B.R. 143, 155 (Bankr.W.D.Tex.1992), but this conflict is explicitly recognized in the text of the statute itself, which requires the bankruptcy trustee to balance the need for expeditious conduct against the "best interests of parties in interest"....

---

[9]The Bankruptcy Code provides that a Chapter 7 trustee shall, inter alia, "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1).  *See also LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.*), 196 F.3d 1, 6 (1st Cir. 1999).

[10]Fed. R. Bankr. P. 1001 provides in part that "[t]hese rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."

*In re Hutchinson*, 5 F.3d 750, 753-54 (4th Cir. 1993).

Bankruptcy trustees are fiduciaries and the obligations imposed on them in administering bankruptcy estates are fiduciary obligations.  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 12 (2000).  It is also incumbent upon the Bankruptcy Court to ensure the administration of the estate in an efficient and economical manner, and the protection of the assets of the estate from depletion.  *Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.),* 794 F.2d 1051, 1055 (5th Cir.1986).  Similarly, the Bankruptcy Court must ensure that *all* classes of creditors are treated fairly in accordance with the Code's provisions.

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), courts disagreed as to a trustee's responsibility when the debtor was a plan administrator of a defined benefit plan under ERISA.  *Compare In re New Center Hosp.*, 200 B.R. 592, 593 (E.D. Mich. 1996) (bankruptcy trustee assumes the debtor's position as plan administrator) *with Chambers v. Kaleidoscope, Inc. Profit Sharing Plan and Trust*, 650 F. Supp. 359, 369 (N.D.Ga. 1986) (prebankruptcy plan administrator continued as such until "he or she resigns in accordance with the applicable plan provisions *and* makes arrangements-e.g., through appointment of a successor-for the continued management of the plan").  BAPCPA added a new provision to resolve this conflict and add this duty to the others imposed by § 704(a).  Section 704(a)(11) provides:

> if, at the time of the commencement of the case, the debtor (or any entity designated by the debtor) served as the administrator (as defined in section 3 of the Employee Retirement Income Security Act of 1974) of an employee benefit plan, [the trustee shall] continue to perform the obligations required of the administrator.

10

The meager legislative history addresses the new provision in one sentence.

> In addition, the bill streamlines the appointment of an ERISA administrator for an employee benefit plan, under certain circumstances, to minimize the disruption that results when an employer files for bankruptcy relief.

H.R. REP. 109-31(I) (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 105.

Although it is now clear that a bankruptcy trustee must continue to perform a debtor-plan administrator's obligations, the Bankruptcy Code and Rules provide no instruction as to how to meld a trustee's bankruptcy and ERISA responsibilities.  Based on the positions taken by the parties, ERISA's and the Bankruptcy Code's policies seemingly come into conflict in this case. The DOL argues that, to the extent that the Bankruptcy Code's goal of speedy and efficient administration conflicts with ERISA's need to hold plan fiduciaries responsible for breaches of their fiduciary duties, and provides a six year statute of limitations within which to bring such actions, the Bankruptcy Code *must yield* to ERISA.  Not surprisingly the Trustee takes the opposite position, arguing that permitting the DOL to conduct business as usual without regard to the bankruptcy not only leaves the case open for a potentially protracted period of time but also leaves a bankruptcy trustee potentially personally liable for the same protracted period, a status that may deter individuals from serving as bankruptcy trustees.  Congress articulated no express preference for one statute over the other.  Instead Congress left it to the bankruptcy court to fashion a process that reconciles the goals of each statute to the extent possible and determine, if conflict is inevitable, how to resolve the conflict in such a way as to be the least disruptive to the goals of each statute.[11]

---

[11] A court "must read [two potentially conflicting] statutes to give effect to each if [it] can do so while preserving their sense and purpose."  *Watt v. Alaska*, 451 U.S. 259, 267 (1981).

*BANKRUPTCY COURT JURISDICTION*

The parties agree in their statements of the law governing this Court's jurisdiction.  It is the application of the facts to the law that fuels the dispute.  Before proceeding to discuss the application of the facts to the legal standards, this basis of the Court's jurisdiction is briefly set forth.

> The federal courts' jurisdiction over bankruptcy cases is governed by 28 U.S.C. § 1334 (2000). *Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). Section 1334 sets up two main categories of bankruptcy cases over which the district court has jurisdiction: "cases under title 11," over which the district court has original and exclusive jurisdiction, 28 U.S.C. § 1334(a), and "proceedings arising under title 11, or arising in or related to cases under title 11," over which the district court has original, but not exclusive jurisdiction, 28 U.S.C. § 1334(b).  *See also Donaldson v. Bernstein,* 104 F.3d 547, 552 (3d Cir.1997). Section 1334(a) states that the only cases over which the district court has exclusive jurisdiction are "cases under title 11." A case under title 11 is the bankruptcy petition itself, such as a Chapter 11 reorganization. 1 *Collier on Bankruptcy* ¶ 3.01 [3], at 3-12 to 3-13 (L. King et al. eds., 15th rev. ed. 2001) ("The 'case' referred to in section 1334(a) is the umbrella under which all of the proceedings that follow the filing of a bankruptcy petition take place."); *see also Donaldson,* 104 F.3d at 552.

*In re Middlesex Power Equipment & Marine, Inc*., 292 F.3d 61, 66  (1st Cir. 2002).  A proceeding "arises under" the Bankruptcy Code, if it involves a "cause of action created or determined by a statutory provision of title 11." *Wood v. Wood (In re Wood),* 825 F.2d 90, 96 (5th Cir.1987).  Proceedings "arising in" a bankruptcy case "are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 97. Together, proceedings that "arise in" and "arise under" title 11 constitute the bankruptcy court's "core" jurisdiction. *See* 28 U.S.C. § 157(b); *Wood, 825 B.R..* at 96-97.

The seminal case of *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), contains

the well known and widely accepted standard for related to jurisdiction.

> The usual articulation of the test for determining whether a civil
> proceeding is related to bankruptcy is whether *the outcome of that
> proceeding could conceivably have any effect on the estate being
> administered in bankruptcy....*Thus, the proceeding need not
> necessarily be against the debtor or against the debtor's property.
> An action is related to bankruptcy if the outcome could alter the
> debtor's rights, liabilities, options, or freedom of action (either
> positively or negatively) and which in any way impacts upon the
> handling and administration of the bankrupt estate.

*Id*. (Emphasis in the original).

Congress granted the district courts the power to refer bankruptcy cases as well as civil proceedings which arise in or under the Bankruptcy Code and those related to bankruptcy cases to the bankruptcy courts. 28 U.S.C. § 157(a). In Massachusetts, the district court has referred the broadest possible universe of cases which a bankruptcy court could hear, namely all cases over which the district court may exercise jurisdiction under either § 1334(a) or (b). LR, D. Mass. 201.

## CASE OR CONTROVERSY REQUIREMENT

The exercise of the judicial power by federal courts is limited to "cases" and "controversies." U.S. Constitution, Art III, § 2. *Muskrat v. U.S.*, 219 U.S. 346, 356, 31 S.Ct. 250, 253 (U.S.1911). After the Supreme Court's plurality decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress revamped bankruptcy court jurisdiction and as seen above, placed it initially with the district court. Bankruptcy courts, now deemed units of the district courts, 28 U.S.C. § 151, have jurisdiction referred to them by the district courts. Therefore bankruptcy courts, although not established pursuant to Article III, are governed by the same case or controversy

restriction that limits the jurisdiction of Article III courts. *In re Kilen*, 129 B.R. 538, 542 (Bankr. .N.D.Ill.1991). They may not issue advisory opinions.

The case or controversy restriction applies to all federal actions, including declaratory judgment actions as well as to those for injunctive relief. 28 U.S.C.A. § 2201. *See also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878-79, 94 L.Ed. 1194 (1950). Determining the presence of a case or controversy can be complicated when the requested relief is in the form of a declaratory judgment action.[12]   In *Babbitt v. United Farm Workers Nat. Union*,  442 U.S. 289, 297-298, 99 S.Ct. 2301, 2308 (1979), the Supreme Court addressed this difficulty. "The difference between an abstract question and a 'case or controversy' is one of degree, of course, and is not discernible by any precise test.... The basic inquiry is whether the conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." (Internal citation and quotation marks omitted).

One doctrine closely related to the case or controversy prerequisite is the ripeness doctrine. The ripeness doctrine "determines when a proper party may bring an action. The function of the ripeness doctrine is to prevent federal courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Philadelphia Federation of Teachers, American Federation of Teachers, Local 3, AFL-CIO v. Ridge,* 150 F.3d 319, 323

---

[12]Declaratory judgment actions are to be brought by complaint, Fed. R. Bankr. P. 7001(7) and (9), but the Termination Motion requests both a declaration regarding the Trustee's completion of all of his responsibilities under § 704(a)(11) and an injunction against future claims. The Court concludes there is nothing to be gained by requiring the Trustee to commence an adversary proceeding when the parties have had a fair opportunity to fully address the relevant issues in the context of this contested matter and where neither party has asserted that there is a factual dispute.

(3d Cir.1998) and quotation marks omitted).

Determining ripeness, like determining the presence of a case or controversy, is not

always an easy process.  In *State of R.I. v. Narragansett Indian Tribe*, 19 F.3d 685, 692 -693 (1st

Cir.), *cert. denied*, 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed2d 211 (1994), the court articulated a

two-part inquiry of adverseness and hardship to the parties.

> The linchpin of ripeness ... is adverseness. In a declaratory
> judgment action adverseness must be appraised in a practical,
> commonsense way. Thus, satisfying the adverseness requirement
> demands that the facts alleged, under all the circumstances, show
> that there is a substantial controversy, between parties having
> adverse legal interests, of sufficient immediacy and reality to
> warrant the issuance of a declaratory judgment. This requirement
> should not be applied woodenly. Most litigation has idiosyncratic
> features, and the adverseness criterion invites careful calibration
> on a case-by-case basis. The line is often difficult to draw. While a
> declaratory judgment should not be granted in speculative
> situations, a litigant does not have to await the consummation of
> threatened injury to obtain preventive relief. If the injury is
> certainly impending that is enough.
>
> One sound way of gauging adverseness is to evaluate the nature of
> the relief requested. The controversy must be such that it admits of
> specific relief through a decree of conclusive character, as
> distinguished from an opinion advising what the law would be
> upon a hypothetical state of facts.
>
> The second part of the ripeness inquiry evoked by declaratory
> judgment actions is concerned with the hardship to the parties that
> would result from a refusal to consider granting relief. We believe
> that this part of the inquiry should focus on the judgment's
> usefulness. Rather than asking, negatively, whether denying relief
> would impose hardship, courts will do well to ask, in a more
> positive vein, whether granting relief would serve a useful
> purpose, or, put another way, whether the sought-after declaration
> would be of practical assistance in setting the underlying
> controversy to rest.

*Id.* (internal citations and quotation marks omitted).

15

*DERIVED JUDICIAL IMMUNITY*

The DOL alleges that denial of the Proposed Order does not involve the Trustee's

derived judicial immunity and that in any event, he is not entitled to an order conferring judicial

immunity in the absence of a case or controversy.  In *Mosser v. Darrow* 341 U.S. 267, 71 S.Ct.

680,95 L.Ed. 927 (U.S. 1951), the Supreme Court acknowledged that one common way in which

bankruptcy trustees traditionally protected themselves from personal liability was to petition the

bankruptcy court for instructions.  "The practice is well established by which trustees seek

instructions from the court, given upon notice to creditors and interested parties, as to matters

which involve difficult questions of judgment.... A further remedy of a trustee for limiting, if not

avoiding, personal liability is to account at prompt intervals, which puts upon objectors the

burden of raising their objections. "  *Id.* at 274-74, 71 S.Ct. at 683-84.  As the Court of Appeals

for the First Circuit noted, "Following *Mosser*, this court has explained that a trustee acting with

the explicit approval of a bankruptcy court is entitled to absolute immunity, as long as there has

been full and frank disclosure to creditors and the court.  Only if a trustee prevaricates or

otherwise acts in bad faith does he doff the cloak of derived judicial immunity." *Mailman*, 196

F.3d at 8.  Although *Mosser* continues to be cited, including by the First Circuit and other courts,

the requirement of a case or controversy, coupled with the ripeness doctrine, inform that the

Court must not render an advisory opinion or a premature one in an effort to insulate a trustee

faced with a difficult question.  Although the Trustee has provided the requisite "candid

disclosure" to the Court and creditors, including those holding possible claims arising from the

Trustee's termination of the 401(k) Plan, it does not follow that providing such disclosure is

sufficient to merit a "comfort order" in the absence of a case or controversy.  While the Court

16

recognizes that the derived judicial immunity resulting from a judicial order "is essential to the

orderly administration of bankruptcy proceedings," *Mailman*, 196 F.3d at 8, such protection

should be reserved for such matter as the sale or abandonment of estate property, not advisory or

premature decisions.

Moreover, at least one court, *In re Freelander Inc., The Mortg. People,* 95 B.R. 390

(Bankr. E.D. Va. 1989), has questioned whether *Mosser* is still good law in light of the evolution

of bankruptcy judges from bankruptcy referees to true judicial officers and the development of

the United States Trustee system.  Because of these changes in bankruptcy practice, the court

refused to advise the trustee whether or not to pursue an appeal.  The *Freelander* court's

reasoning provides further support for removing a court from deciding issues that are more

appropriately left to those responsible for administering bankruptcy estates.

Determining whether there is currently a case or controversy before the Court that arises

in, arises under, or relates to the Chapter 7 bankruptcy requires the Court to analyze the relief

sought in paragraphs (B) and (C) of the Proposed Order separately.  Before turning to that

analysis, a brief discussion of the *AB & C Group* case, upon which the DOL heavily relies, and

*Allard v. Coenen (In re Trans-Industries, Inc.)*, 419 B.R. 21 (Bankr. E.D. Mich. 2009), which the

Trustee asserts is controlling, may be helpful.

## THE AB & C GROUP CASE

In *AB & C Group* the debtor had been a sponsor and an administrator of a defined

contribution plan prior to its bankruptcy and had engaged a third party bank to assist it in

carrying out its duties.  The agreement between the debtor and the bank provided that the bank

was to "conduct tests and make reports required by ERISA and the Internal Revenue Code,

17

follow the debtor's directives in allocating contributions to employee accounts and make

distributions." *AB & C Group*, 411 B.R. at 287.  The debtor abruptly stopped its operations and

shortly thereafter was the subject of an involuntary Chapter 7 petition.  An order for relief

entered.  The Chapter 7 trustee, in conjunction with the bank, sought approval of an order

establishing a two-step process to terminate the plan.

As part of the first step, among other things, the Chapter 7 trustee requested permission

for the bank and trustee to submit a list of fees for services that the bank would perform and to

provide parties with a fifteen day deadline to object to those proposed fees.  If no objection was

filed, the fees were to be deemed *prima facie* reasonable and the bank would receive 75% of the

listed fees prior to undertaking the tasks to terminate the plan.  If an objection was filed, the

court would be asked to determine the *prima facie* reasonableness of the fees.  Upon resolution

of the objection, the bank would undertake its tasks but only if it received 75% of the listed fees

beforehand.  Unlike the case at bar, the *AB & C Group* trustee proposed to pay the bank's fees

from the corpus of the plan.

If the bank accomplished the plan termination, then under step two, the bank would

provide notice that the plan had been terminated and give the parties in interest fifteen days

within which to request an investigation of the bank's performance.  If any party requested an

investigation of the bank's action, the bank would be required to submit documents under seal to

the court.  It is unclear whether the party requesting the investigation would have access to the

documents but the procedure contemplates that within thirty days of filing a timely investigation

request, the "investigating party" could file an objection to the bank's performance.  If no

objection was filed, the procedure contemplated entry of an order deeming the bank's

18

performance complete and awarding it the remaining 25% of its fees.  If there was an timely

objection, the bank and the trustee wanted the bankruptcy court to determine whether the bank's

performance was proper.

The DOL objected on the grounds that the court lacked jurisdiction to enter the order.

The trustee and the bank argued that the trustee was assuming the prepetition agreement between

the debtor and the bank under 11 U.S.C. § 365 and employing the bank under 11 U.S.C § 327.

According to the trustee, these facts, coupled with the trustee's duty under § 704(a)(11) to

administer the plan, were sufficient to bring the order within the court arising in, arising under,

or related to jurisdiction. The court disagreed.

Dispensing with the argument that the proposed order really constituted a motion to

assume the prepetition agreement, the court noted that the order attempted to modify the terms of

the agreement.  In analyzing its jurisdiction to approve professional fees, the court noted that the

DOL did not dispute the court's jurisdiction to approve retention of the trustee's professionals.

It agreed with the DOL, however, that disputes over fees paid from non-estate plan assets arise

under ERISA, not the Bankruptcy Code.  The court stated that such a dispute "does not depend

upon bankruptcy for its existence, nor does it involve an administrative matter that arises only in

bankruptcy cases." *Id.* at 292.  The court relied on the *Pacor* standard in ruling it lacked related

to jurisdiction because the allowance of fees to be paid from non-estate assets such as the defined

benefit plan had no conceivable effect on the estate.  Although the case might be narrowly

viewed as involving a dispute as to the ultimate arbiter of fees paid from plan assets, one point of

discussion in the decision bears upon the issues raised here.

In addressing whether the trustee's derived judicial immunity by acting with the

19

permission of the court established jurisdiction, the *AB&C Group* court stated:

> It may be that when the Trustee acts as a Plan administrator, he acts as a bankruptcy trustee, because § 704(a)(11) created such a duty. A breach by a trustee of his bankruptcy duties can result in personal liability, *Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951), but only if he acts outside his authority as a bankruptcy trustee. *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),* 819 F.2d 74, 76 (4th Cir.1987). Where a bankruptcy "trustee acts pursuant to the explicit instructions of the bankruptcy court," he enjoys "complete immunity from suit." *Id.* Inasmuch as the Proposed Order is a method by which the Trustee seeks to obtain the imprimatur of the court regarding his decision made as Plan administrator, and thus immunity, it may appear to have a bankruptcy administrative purpose.

> However, the limited purpose of providing the Trustee with a possible future defense of immunity does not provide a nexus sufficiently close to a bankruptcy proceeding upon which this court can rely for "related to" jurisdiction. For example, in *Torkelsen v. Maggio (In re The Guild and Gallery Plus, Inc.),* 72 F.3d 1171 (3d Cir. 1996), the debtor held a painting in bailment pre-petition. When the bailor demanded that the bankruptcy trustee return the painting, the trustee could not locate the painting, and the bailor sued the trustee in his individual capacity. Undisputed in *Torkelsen* was the fact that the painting was never part of the bankruptcy estate. Nevertheless, the plaintiff argued that the suit against the trustee related to the bankruptcy case based on the defendant's status as the bankruptcy trustee. The Third Circuit rejected the plaintiff's argument, stating that "all claims filed in a bankruptcy court must be able to stand on their own as either core or related proceedings.... Surely not every suit against a trustee, regardless of how tenuous its connection to a bankruptcy estate, automatically confers jurisdiction simply because the trustee is named as a party.... Subject matter jurisdiction is not 'created by the fact that the trustee holds his office by court appointment.' " *Id.* at 1181 (quoting *In re McKinney,* 45 B.R. 790, 792 (Bankr. W.D.Ky. 1985)).

In this case, the basis for "related to" jurisdiction over the payment provisions of the Proposed Order cannot be its mere relationship to the bankruptcy Trustee; rather, there must be a closer connection to the underlying bankruptcy case. The thrust of the order relates to the Trustee's decision to charge the Plan with the Bank's fee. In that regard, the activity covered by the Proposed Order relates to non-estate assets for which the Trustee has personal, fiduciary duties created by ERISA. The estate and its creditors are not affected by the outcome of the Trustee's decision to

> pay the administrative costs from the Plan. The court can find nothing in
> the Proposed Order that relates to the underlying bankruptcy case beyond
> the coincidental identities of the Plan's administrator and the bankruptcy
> estate's trustee, which the court finds is an insufficient nexus for asserting
> its authority over what fees and costs may be properly payable from the
> Plan.

*Id.* at 294 -296.  Again, however, as the above-quoted language recognizes, "the thrust of the

order" relates to the Trustee's proposal to charge the Plan for the Bank's fees.  The payment of

fees from non-estate assets is not an issue in the instant case.  The thrust of this Proposed Order

requires the melding of the Bankruptcy Code's  and ERISA's goals.

Moreover the Court respectfully disagrees that the Trustee's duties are created by

ERISA.  His duties originate in § 704(a) and only draw in ERISA because of  § 704(a)(11).

When Congress amended the Bankruptcy Code in 2005, that it chose to place the statutory

obligation solely in the Bankruptcy Code, rather than in ERISA or in both statutes, is some

indication that Congress intended ERISA responsibilities to fit within the framework of the

Bankruptcy Code, not the other way around.  If the Court were convinced that the two statutes

are irreconcilable, it is cognizant of the maxim that where two statutes conflict "the latter in time

prevails over the former. Congress passed the Bankruptcy Code in 1978; ERISA was enacted

previously in 1974."  Therefore the Code is controlling.  *In re DeWeese*, 47 B.R. 251, 256

(Bankr. N.C.1985).

*THE TRANS-INDUSTRIES CASE*

In *Trans-Industries* the Chapter 7 trustee sued the prepetition pension plan fiduciaries for

breach of their fiduciary duties and breach of contract.  Although all of the parties agreed that the

trustee had standing to pursue the claims, one of the defendants moved to dismiss on the grounds

that the court lacked subject matter jurisdiction.

21

The court rejected the trustee's arguments that the proceeding arose in or under title 11 and was a core matter under 28 U.S.C. § 157(b)(2)(A) because it concerned the administration of the estate.   The court concluded that the claims for breach of fiduciary duties imposed by ERISA would be decided under the applicable provisions of ERISA, not any provision of the bankruptcy code.  Similarly the state law contract claims do not involve an action created or determined by the bankruptcy code, so they too were decided under ERISA.

The court, however, concluded that it had *related to* jurisdiction based on the particular facts of the case, namely that the trustee had used and anticipated using estate funds in connection with his administration of the plan and the litigation.  To the extent that he was successful in his actions against the prepetition fiduciaries, the estate would be reimbursed for the expenditures.

In the instant case the Trustee has conceded that the 401(k) Plan has no funds and he has not commenced litigation which might yield funds.  Consequently the basis for the *Trans-Industries* court's finding of related to jurisdiction is not present in this case.

Although both *AB & C Group* and *Trans-Industries* are distinguishable from the instant case, the Court finds guidance for its analysis of its power to enter the requested relief and more importantly, the timing for entry of such relief, in the bankruptcy code and long-established trustee practice.

## SECTION 305 AND DISCHARGE OF A TRUSTEE

"After an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a).  Two requirements are necessary before a case may be closed: the case must be "fully administered," that is, the assets available for liquidation must be

liquidated and the obligations of the estate paid in accordance with the Bankruptcy Code's

distribution cascade found in 11 U.S.C. § 726, and the trustee must be discharged. Section

350(a)'s requirement that a trustee must be discharged stands in contrast to and negates the

DOL's reading of § 524(e), which it interprets broadly as a general prohibition against the

discharge of a trustee.

There is no doubt that this Court has jurisdiction to "discharge" a trustee. The discharge

of a bankruptcy trustee relieves him from further obligations under § 704(a). It is a recognition,

based on the facts put before the Court in a trustee's final report and final accounting that the

case has been fully administered. 11 U.S.C. § 704(a)(9). This method of reviewing a trustee

representation that he has fully administered the assets of a bankruptcy estate predates BAPCPA.

*See, e.g., In re San Juan Hotel Corp.*, 847 F.2d 931, 939 (1st Cir. 1988) ( "There is no explicit

provision in the Bankruptcy Code prescribing a period of limitations for actions against trustees

in their personal capacity. A fair reading of the code as a whole, however, leaves no doubt that a

trustee cannot be released from liability before discharge.") There is nothing in BAPCPA that

indicates congressional intent to alter this system. There is no indication that a special and early

discharge from duties imposed by § 704(a) should be given. Therefore the Trustee, even though

he acts as an ERISA plan fiduciary, will be entitled to a discharge from further obligations under

§ 704(a), but not at this point in the bankruptcy.

Nor it there any indication that § 704(a)(11) requires that a bankruptcy case be held open

for six years after a trustee terminates a defined benefit plan to accommodate the ERISA statute

of limitations. As the DOL acknowledges the Court has jurisdiction to enter an order setting a

bar date for the DOL to file claims against the estate. That the DOL can conduct an audit of a

23

plan to aid it in determining whether breaches of fiduciary duties have occurred does not divest

the Court of the right to set a bar date for actions against the Debtor.  Moreover, if the DOL were

to discover a breach of fiduciary duty after the case is closed, it has the same right as any other

party in interest who believes a trustee breached his fiduciary obligations to seek permission

from this Court to reopen the case[13] and commence an action against the Trustee.  But Congress

and case law have already developed a process for this, as explained below.

### *28 U.S.C. § 959 AND SUITS AGAINST A BANKRUPTCY TRUSTEE*

"It is well settled that a trustee cannot be held personally liable unless he acted outside

the scope of his authority as trustee, *i.e.,* acted *ultra vires,* or breached a fiduciary duty that he

owned as the trustee to some claimant."  *State of Ill., Dept. of Revenue v. Schechter*, 195 B.R.

380, 384 (N.D. Ill.1996).  Here there is no allegation that the Trustee acted *ultra vires*; it is his

liability for potential breaches of his fiduciary duty that is at issue.

Lawsuits against bankruptcy trustees for breaches of their duties have their origins in the

case of *Barton v. Barbour,*  104 U.S. 126, 127, 26 L.Ed. 672 (1881), where the Supreme Court

ruled that the common law barred suits against receivers[14] in courts other than the court charged

with the administration of the estate.  Congress, however, created a narrow exception to the

foregoing by enacting 28 U.S.C. § 959.  That statute provides:

---

[13]Reopening a case is not automatic upon the filing of a motion.  Section 350(b) instructs
that the case may be reopened "to administer assets, to accord relief to the debtor, or for other
cause."  The bankruptcy court has discretion to reopen a case based on the equities and particular
circumstances of each case.  *In re Apex Oil Co., Inc.*, 406 F.3d 538, 542 (8th Cir. 2005); *In re
Crocker,* 362 B.R. 49, 53 (1st Cir. BAP  2007).

[14]Although *Barton* involved a state court appointed receiver, it is applicable to
bankruptcy trustees.  *Muratore v. Darr*, 375 F.3d 140, 143 (1st Cir. 2004).

> (a) Trustees, receivers or managers of any property, including
> debtors in possession, may be sued, without leave of the court
> appointing them, with respect to any of their acts or transactions in
> carrying on business connected with such property. Such actions
> shall be subject to the general equity power of such court so far as
> the same may be necessary to the ends of justice, but this shall not
> deprive a litigant of his right to trial by jury.

But just as the *Barton* doctrine and 28 U.S.C. § 959 recognize, a trustee's discharge does not

relieve him from potential liability for breach of his fiduciary duties in administering estate

assets.  Actions arising out of his performance of his duties under § 704(a)(11) may be brought

even after the bankruptcy is closed, although only after bankruptcy court approval is obtained.

### PROPOSED ORDER PARAGRAPH (B): ANY AND ALL CLAIMS RELATED TO THE 401(K) PLAN AND THE TERMINATION THEREOF, OTHER THAN [THE TERMINATION EXPENSES] ARE FOREVER BARRED

For the reasons set forth above, the Court cannot grant an order barring all claims relating

to the termination of the 401(k) Plan at this point.  When the case is closed, the Trustee will

receive a discharge and if, at some point thereafter, the DOL believes he has breached his

fiduciary duties, the DOL must return to this forum to seek relief to proceed against the Trustee

personally.

### PROPOSED ORDER PARAGRAPH (C):  THE TRUSTEE HAS SATISFIED HIS OBLIGATIONS UNDER BANKRUPTCY CODE  § 704(A)(11) AS THOSE DUTIES RELATE TO THE 401(K) PLAN AND SHALL HAVE NO REMAINING LIABILITY AND/OR OBLIGATIONS RELATED THERETO.

The Court clearly has jurisdiction to enter this type of order.  It is premature to enter it at

this point in the case.  The duty imposed by § 704(a)(11) should be treated no differently than

other § 704(a) duties.  The Trustee will receive the same order indicating he has satisfied his

statutory obligations as he receives in all Chapter 7 cases.

**CONCLUSION**

25

For the foregoing reasons, so much of the Termination Motion that requests entry of

paragraphs (B) and (C) of the Proposed Order is DENIED without prejudice.

A separate order will issue.

Dated: March 29, 2010                    _____

Joel B. Rosenthal
United States Bankruptcy Judge